IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UDX, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:14cv918 |
| | ) |
| JAMES A. HEAVNER, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court are the motion of Defendant James A. Heavner to refer this case to the bankruptcy court for consideration with related proceedings (Doc. 17) and the competing motion of Plaintiff UDX, LLC ("UDX") for abstention and remand (Doc. 19). For the reasons set forth below, UDX's motion will be denied, Heavner's motion will be granted, and the case will be referred to the bankruptcy court.

I. BACKGROUND

On October 22, 2014, UDX, a North Carolina limited liability company, initially filed suit in State court against several companies — University Directories, LLC; Vilcom, LLC; Vilcom Interactive Media, LLC; Vilcom Properties, LLC; Vilcom Real Estate Development, LLC, (collectively, the "Corporate Defendants") — as well as Heavner, University Directories, LLC's manager and allegedly the registered agent for at least one of the other

Corporate Defendants. (Doc. 24 ¶¶ 1-2; Doc. 2 ¶¶ 4-5.) The lawsuit arises out of certain loans made by Harrington Bank, FSB, now held by UDX and allegedly guaranteed by Heavner, and raises numerous State law claims regarding them. (See Doc. 2 ¶¶ 2-8, 30-67.) On October 24, 2014, Corporate Defendants filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code; the bankruptcy case is assigned Case No. 14-81184.[1] (Doc. 1 ¶ 4; Doc. 24 ¶ 15.)

On October 31, 2014, Corporate Defendants removed this action to this court pursuant to 28 U.S.C. § 1452, contending that this court has jurisdiction because the action arises under Title 11 or arises in or relates to cases under Title 11.[2] (Doc. 1.) The Corporate Defendants then moved to refer UDX's claims against them to the pending bankruptcy case. (Doc. 11.) On November 6, UDX voluntarily dismissed all of its claims against the Corporate Defendants, mooting the Corporate Defendants' motion and leaving Heavner as the only defendant. (Doc. 13.)

On December 23, 2014, Heavner filed the current motion to refer this case to the bankruptcy court on the grounds that the case relates to Case No. 14-81184. (Doc. 17.) Heavner also answered UDX's original complaint. (Doc. 18.) UDX responded to

---

[1] On June 17, 2015, the bankruptcy court converted Case No. 14-81184 from one under Chapter 11 of Title 11 to one under Chapter 7 of Title 11.

[2] Neither party contends that the automatic stay created by 11 U.S.C. § 362 affected Corporate Defendants' removal.

Heavner's motion (Doc. 19) and, contrary to this district's local rules, titled a section of its response brief "motion for abstention and remand" (id. at 4-6). See Local Rule 7.3 (requiring that all motions be accompanied by a brief and be "set out in a separate pleading"). After filing its response, UDX also amended its complaint, asserting three causes of action under North Carolina law against Heavner: breach of contract, defamation, and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. (Doc. 24 ¶¶ 20-38.)

Filing no reply on his motion to refer, Heavner nevertheless responded to UDX's request for abstention and remand (Doc. 25), to which UDX replied (Doc. 32). Heavner also answered UDX's amended complaint. (Doc. 26.) With UDX's motion fully briefed and the time for Heavner's reply on his motion to refer having expired, the motions are now ripe for consideration.

**II. ANALYSIS**

The parties seek different forums for adjudication of this case. Heavner seeks to have the case referred to the bankruptcy court. (Doc. 17.) UDX argues that the court must abstain and moves the court to equitably remand the case to the State court. (Doc. 19 at 4-6.) Both motions will be addressed below.

3

A.  **UDX's Motion for Abstention and Remand**

1.  **Abstention**

UDX argues that this court must abstain from adjudicating this proceeding under 28 U.S.C. § 1334(c)(2),[3] which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, the application of mandatory abstention under § 1334(c)(2) requires the moving party to establish that

> (1) a party to the proceeding files a timely motion to abstain; (2) the proceeding is based upon a state law claim or state law cause of action; (3) the proceeding is a "non-core, but related to" proceeding (not "arising under" Title 11); (4) the proceeding is one which could not have been commenced in a federal court absent jurisdiction under § 1334; (5) an action is commenced and can be timely adjudicated in state court.

Massey Energy Co. v. W. Va. Consumers for Justice, 351 B.R. 348,

---

[3] Neither party disputes that mandatory abstention under § 1334 applies to cases removed to federal court. See In re Southmark Corp., 163 F.3d 925, 929 (5th Cir. 1999) (noting the "majority rule" that abstention applies to cases removed to federal court); In re Midgard Corp., 204 B.R. 764, 774 (B.A.P. 10th Cir. 1997) ("The majority of courts, however, hold that abstention is applicable to removed cases. These courts find that two proceedings are not necessary for abstention to apply and abstention, or abstention coupled with remand, transfers a removed proceeding to state court."); Massey Energy Co. v. W. Va. Consumers for Justice, 351 B.R. 348, 350 (E.D. Va. 2006) (applying mandatory abstention to proceeding removed to federal court).

350 (E.D. Va. 2006). UDX has not demonstrated that mandatory abstention applies in this case.

Assuming, without deciding, that UDX's request is a "timely motion" under § 1334(c)(2),[4] UDX must still show that this is a "proceeding based upon a State law claim or State law cause of action . . . with respect to which an action could not have been commenced in [this] court." 28 U.S.C. 1334(c)(2); see also Stoe v. Flaherty, 436 F.3d 209, 219 n.5 (3d Cir. 2006), as amended (Mar. 17, 2006) (noting that moving party "had the burden of proving his right to mandatory abstention"); Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp., No. 3:14CV706, 2015 WL 3540473, at *6 n.13 (E.D. Va. June 3, 2015) (concluding that court "was most persuaded by the traditional notion that the moving party carries the burden of proof" in deciding motion for mandatory abstention); Frelin v.

---

[4] The timeliness of UDX's request is far from clear, and the right to require a court to abstain can be waived by a party who delays in making a motion for abstention. See In re Midgard Corp., 204 B.R. 764, 776 (B.A.P. 10th Cir. 1997). "[A] party acts in a timely fashion when he or she moves as soon as possible after he or she should have learned the grounds for such a motion." In re Novak, 116 B.R. 626, 628 (N.D. Ill. 1990); see also Waugh v. Eldridge, 165 B.R. 450, 452 (Bankr. E.D. Ark. 1994) (observing that "lengthy delay, combined with the lack of any evidence that the motion could not have been filed earlier, renders the motion untimely"). Here, UDX waited over two months after the case was removed as well as two months after it dismissed its claims against the Corporate Defendants before raising the issue of mandatory abstention. See In re AHT Corp., 265 B.R. 379, 384 (Bankr. S.D.N.Y. 2001) (dismissing motion as untimely for two and a half month delay in filing motion); cf. Cline v. Quicken Loans Inc., No. 5:11CV63, 2011 WL 2633085, at *4 (N.D.W. Va. July 5, 2011) (timely motion filed three weeks after removal). Because of the other flaws in UDX's request, timeliness need not be addressed further.

5

Oakwood Homes Corp., 292 B.R. 369, 381 (Bankr. E.D. Ark. 2003) ("The movant has the burden to prove that abstention is required under § 1334(c)(2).").

Although the Corporate Defendants removed this action under 28 U.S.C. § 1452(a),[5] which authorized the removal,[6] they have been dismissed as parties. Thus, only Heavner remains as a defendant. Under 28 U.S.C. § 1332(a), the court has subject matter jurisdiction over a "civil action[] where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." UDX contends that (1) diversity jurisdiction is lacking because Heavner is domiciled in North Carolina (as UDX alleges it is); and (2) even if Heavner is not domiciled in North Carolina, diversity did not exist at the time of removal.

As to UDX's first contention – that Heavner is a North Carolina citizen for purposes of diversity jurisdiction, "state

---

[5] 28 U.S.C. § 1452(a) provides: "A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

[6] "Under the bankruptcy removal statute, . . . any one party has the right to remove the state court action without the consent of the other parties." Creasy v. Coleman Furniture Corp., 763 F.2d 656, 660 (4th Cir. 1985); see also Fromhart v. Tucker, No. 5:11CV97, 2011 WL 5202239, at *3 (N.D.W. Va. Oct. 31, 2011) (applying Creasy's rule allowing for removal without unanimity).

6

citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile." Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 663 (4th Cir. 1998). "Domicile requires physical presence, coupled with an intent to make the State a home." Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008). Determining a party's intent requires an examination of the totality of the circumstances, including "current residence, voting registration and voting practices, location of personal and real property; location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes." Hanks v. Coan, No. 1:99CV00119, 1999 WL 1938851, at *3 (M.D.N.C. Aug. 17, 1999) (quoting Dyer v. Robinson, 853 F. Supp. 169, 172 (D. Md. 1994)).

Here, Heavner's stated intention is, and has been for the past fifteen years, that he is a South Carolina citizen. (Doc. 25-2 ¶ 3.) He is registered to vote in South Carolina and has recently voted in that State. (Id. ¶ 4; Doc. 32-1 at 20.); see also Am. Heartland Port, Inc. v. Am. Port Holdings, Inc., No. 5:11CV50, 2014 WL 1123384, at *5 (N.D.W. Va. Mar. 21, 2014) ("Voting raises a presumption that the voter is a citizen in the state in which he votes, and the presumption must be rebutted by evidence showing a clear intention that his citizenship is

7

otherwise." (quoting Griffin v. Matthews, 310 F. Supp. 341, 343 (M.D.N.C. 1969)) (internal quotations and brackets omitted)). Heavner also maintains a South Carolina driver's license and files resident income tax returns in South Carolina. (Doc. 25-2 ¶ 4.) Finally, according to Heavner, his "federal income tax returns for approximately twenty (20) years reflect . . . [that he is] a citizen and resident of the State of South Carolina." (Id.) These facts demonstrate that Heavner's domicile is South Carolina.

UDX's arguments to the contrary are unpersuasive. As evidence of Heavner's lack of intent to be domiciled in South Carolina, UDX first notes that Heavner approved the sale of a home on Hilton Head Island, South Carolina. (Doc. 32 at 5 & n.1.) Heavner, however, stated in his deposition, "[W]ell, we had a home at Hilton Head. It's actually our second home down there. We built this home." (Doc. 32-1 at 3.) Unfortunately, UDX failed to provide the question to which this answer responds. An answer without a question is of little assistance to the court. Even if the court considers the response only, it is at best ambiguous whether Heavner means a "second home" as in "another" home in South Carolina, or "second home" as in a "vacation" home in South Carolina with his primary residence elsewhere. As UDX bears the burden of showing that the statutory requirements of § 1334(c)(2) have been met, it has failed to demonstrate that Heavner has no home in South Carolina. See In re EZ Pay Servs., Inc., 390 B.R.

8

421, 431 (Bankr. M.D. Fla. 2007) (denying motion for mandatory abstention "based on the Plaintiffs' failure to satisfy their burden of proof under § 1334(c)(2)"). Moreover, even if Heavner recently sold his only home in South Carolina, "[a]n individual can reside in one state and be domiciled in another state." See Blake v. Arana, No. CIV. WQQ-13-2551, 2014 WL 2002446, at *2 (D. Md. May 14, 2014); see id. at *3 (finding defendant's maintenance of a Maryland driver's license, despite moving to Virginia, persuasive evidence of an intent to remain domiciled in Maryland).

UDX further notes that Heavner works mainly in North Carolina, maintains membership in various organizations in North Carolina,[7] and has a doctor, a dentist, and other professional acquaintances in North Carolina. (Doc. 32 at 7–8.) At least some of the time, however, Heavner works in South Carolina when he is not needed in North Carolina. (Doc. 32-1 at 5.) He also has a doctor in South Carolina. (Id. at 13.) Until somewhat recently, he was a member of the South Carolina Yacht Club and still "frequently" attends "the Cotillion" in South Carolina. (Id. at 17.) It is unclear where Heavner's family — namely his wife — resides. While neither party presented evidence on this, UDX makes no assertion that his wife resides in North Carolina. (See id. at 17 (Heavner noting

---

[7] Heavner is a member of the Chapel Hill Rotary Club but only pays for membership when he attends, which aligns with the view that Heavner is domiciled in South Carolina but maintains work relationships in North Carolina. (See Doc. 32-1 at 17.)

9

that his wife "keeps up with" his membership in the South Carolina Cotillion).)

Finally, UDX contends that Heavner, "as a native of North Carolina," has the burden to establish his domiciliary in South Carolina. (Doc. 32 at 5.) Heavner was indeed born in North Carolina. (Doc. 32-1 at 18.) "An individual . . . acquires a 'domicile of origin' at birth, which continues until a new one is acquired." Dyer v. Robinson, 853 F. Supp. 169, 172 (D. Md. 1994) (quoting Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989)). The facts above — particularly Heavner's voter registration, driver's license, and tax payments — establish his domicile in South Carolina. See id. ("When establishment of a new domicile is at issue, it is determined by two factors: residence in the new domicile and intention to remain there."); Am. Heartland Port, 2014 WL 1123384, at *5 (holding that voting registration raises a "presumption" that the voter intends to be a citizen of his registration state).

UDX alternatively contends that, even if Heavner is domiciled in South Carolina, diversity did not exist at the time of removal. UDX's argument appears to be that because, at the time of removal this was not a proceeding "with respect to which an action could not have been commenced in" this court based on diversity jurisdiction, § 1334(c)(2) requires abstention. UDX fails to explain why § 1334(c)(2) requires an inquiry into whether the

10

original proceeding, as opposed to the current proceeding, was one "with respect to which an action could not have been commenced in" this court based on diversity jurisdiction.  The text of § 1334(c)(2) offers no indication that the word "proceeding" should be read to refer to the proceeding as it was rather than as it is now.[8]

Nevertheless, even assuming, without deciding, that UDX's interpretation of § 1334(c)(2) is correct, its argument that diversity did not exist at the time of removal still fails.  Usually, when determining diversity between citizens in removal cases, "[d]iversity must be established at the time of removal." Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988).  Importantly, however, "[d]iversity may be created after the filing of a complaint through voluntary acts of the plaintiff."  Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996).  "The rationale for this rule is that although a defendant should not be allowed to change his domicile after the complaint is filed for the sole purpose of effectuating removal,

---

[8] There is also an inconsistency in UDX's argument.  UDX offers the court conflicting time periods to assess its request for mandatory abstention. On the one hand, it contends that, *at the time of removal*, this case is one "with respect to which an action could not have been commenced in" this court based on diversity jurisdiction.  28 U.S.C. § 1332(c).  Yet, on the other hand, UDX argues that this proceeding's *current* claims against Heavner are only "related to" Title 11 as required by § 1332(c), without analyzing the other claims brought at the time of removal and later dismissed.  (Doc. 19 at 5.)

11

there is no reason to protect the plaintiff against the adverse consequences of his own voluntary acts." Id. at 755.

Neither party contends that diversity of citizenship existed at the commencement of the State court action or at the time of filing for removal.[9]  After the filing for removal, however, UDX voluntarily dismissed all of its claims against the Corporate Defendants, leaving Heavner as the only defendant.  (Doc. 13.) Those dismissals cured the jurisdictional defect, allowing for the creation of diversity jurisdiction in this court.  Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159–60 (4th Cir. 2010) (holding that plaintiff's voluntary amendments of "facts that clearly give rise to federal jurisdiction" cured jurisdictional defects without requiring remand).  By dismissing all of its claims against the Corporate Defendants and amending its complaint to bring claims only against Heavner, UDX has failed to show that its dismissal did not confer an additional potential basis for jurisdiction on this court.[10]  See Moffitt, 604 F.3d at 159–60

---

[9] Indeed, Heavner and the Corporate Defendants' notice of removal cites only Title 11 as the basis of federal jurisdiction.  (Doc. 1.)  UDX points out that it is a North Carolina limited liability company (Doc. 24 ¶ 2; Doc. 30 at 1; see also Doc. 25-1 (noting UDX's organization under North Carolina law)) and that Heavner has admitted that it and the Corporate Defendants were North Carolina limited liability companies (Doc. 18 at 1).  However, citizenship of an LLC depends on the citizenship of its members, Carden v. Arkoma Assocs., 494 U.S. 185, 195–96 (1990); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120–21 (4th Cir. 2004), and neither party has provided that information.

[10] UDX states that it "had no choice but to dismiss the [Corporate

(concluding that allowing for jurisdictional cures is "grounded" partially in considerations of judicial economy); Bkcap LLC v. Captec Franchise Trust 2000-1, No. 3:07-CV-00637, 2009 WL 3075353, at *2 (N.D. Ind. Sept. 24, 2009) (holding that voluntary dismissal conferred diversity jurisdiction and that "a remand in this instance would simply constitute a waste of judicial resources"); Chaney v. First Am. Nat. Bank, No. 3:05-0798, 2009 WL 275198, at *8 (M.D. Tenn. Feb. 4, 2009) (holding that voluntary dismissal conferred diversity jurisdiction); Dale v. First Am. Nat. Bank, 370 F. Supp. 2d 546, 551 (S.D. Miss. 2005) (same). But see Hughes v. Unumprovident Corp., No. C 07-4088 PJH, 2009 WL 29895, at *4 (N.D. Cal. Jan. 5, 2009) (holding that involuntary dismissal did not confer diversity jurisdiction).

Consequently, because diversity jurisdiction was available through UDX's voluntary act and UDX has failed to demonstrate that such jurisdiction was not satisfied, UDX has not satisfied the requirements for mandatory abstention under § 1334(c)(2).

---

Defendants] when Heavner put them into bankruptcy." (Doc. 32 at 9.) This is not true. UDX could have simply filed a suggestion of bankruptcy which would have operated to stay, rather than dismiss, UDX's claims against the putatively non-diverse defendants. UDX voluntarily chose to dismiss the claims. To require remand here, where Heavner is not bound by the one-year limitation on his right to seek removal, see 28 U.S.C. § 1446(c), would only invite another removal notice thereafter, resulting in unnecessary waste and inefficiency. See Moffitt, 604 F.3d at 160 (finding it a "waste of judicial resources to remand" because "defendants would almost certainly remove the cases back to federal court").

**2. Remand**

UDX alternatively requests that this court equitably remand this case to the State court pursuant to 28 U.S.C. § 1452(b).[11] Section 1452(b) provides, "The court [with a removed claim] may remand such claim or cause of action on any equitable ground." Considerations for remand include

> (1) duplication of judicial resources; (2) uneconomical use of judicial resources; (3) effect of remand on the administration of the bankruptcy estate; (4) case involves questions of state law better addressed by a state court; (5) comity; (6) prejudice to the involuntarily removed parties; (7) lessened possibility of an inconsistent result; and (8) expertise of the court where the action originated.

In re Ram of E.N. Carolina, LLC, No. 13-01125-8-ATS, 2013 WL 6038283, at *3 (Bankr. E.D.N.C. Nov. 14, 2013). While citing these factors, UDX provides no argument as to how they favor remand. (See Doc. 19 at 5-6.) In any event, the court finds that these factors militate against remand. This district's bankruptcy court currently presides over the bankruptcy proceeding related to this case. An order remanding this case to State court would therefore be uneconomical and duplicative, burdening another court with these interconnected matters. Keeping this case within federal

---

[11] In its reply brief, UDX appears to make a new argument that the court permissively abstain from this matter. (See Doc. 32 at 9-11.) Per Local Rule 7.3(h), "A reply brief is limited to discussion of matters newly raised in the response." See Tyndall v. Maynor, 288 F.R.D. 103, 108 (M.D.N.C. 2013). Heavner's response does not raise the issue of permissive abstention, and the court will not consider the newly raised issue.

14

court will also lessen the possibility of inconsistent judgments. UDX's alternative motion to remand will therefore be denied.

**B.    Heavner's Motion for Referral**

Heavner argues that, pursuant to Local Rule 83.11, this matter should be referred to the United States Bankruptcy Court for the Middle District of North Carolina because it is "related to" Case No. 14-81184 pending before it.  (Doc. 17.)

Pursuant to 28 U.S.C. § 157(a), "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  This district's local rules provide for such referral to the bankruptcy court for cases "related to" a case under title 11.  See Local Rule 83.11.

"An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedoms of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  In re A.H. Robins Co., Inc., 86 F.3d 364, 372 (4th Cir. 1996) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  "The 'related to' category of cases is quite broad and includes proceedings in which the outcome could have an effect upon the estate being administered under Title 11."  Id.

15

Case No. 14-81184 — a Title 11 case — is currently pending before this district's bankruptcy court. In this case (Case No. 14-cv-918), UDX raises three claims against Heavner in its amended complaint, one of which raises a claim for breach of contract under guaranties for loans associated with certain debtors in the bankruptcy court's Case No. 14-81184. Actions by a lender against a guarantor on a debtor's loans are "related to" a debtor's bankruptcy case. See In re 3G Properties, LLC, No. 10-04763-8-JRL, 2010 WL 4027770, at *2 (Bankr. E.D.N.C. Oct. 14, 2010); HH1, LLC v. Lo'r Decks at Calico Jacks, LLC, No. ADV 10-02004, 2010 WL 1009235, at *1-3 (Bankr. M.D.N.C. Mar. 18, 2010). UDX concedes this point in its request for mandatory abstention, which under § 1334(c)(2) requires the proceeding be "related to" a case under Title 11. (See Doc. 19 ¶ 11.) In a hearing held on June 17, 2015, UDX again conceded this point. Therefore, because UDX — as a lender — brings a claim for breach of contract under guaranties on Title 11 debtors' loans against Heavner — a guarantor of those loans, this case is "related to" a case under Title 11 and will be referred to the bankruptcy court as required by Local Rule 83.11.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant Heavner's Motion to Refer Proceeding to United States Bankruptcy Court for the Middle

16

Case 1:14-cv-00918-TDS-JLW   Document 35   Filed 06/26/15   Page 16 of 17

District of North Carolina (Doc. 17) is GRANTED and the case is referred to the bankruptcy court pursuant to Local Rule 83.11.

IT IS FURTHER ORDERED that Plaintiff UDX's Motion for Abstention and Remand (Doc. 19) is DENIED.

/s/   Thomas D. Schroeder<br>United States District Judge

June 26, 2015